Slip Op. 16-78

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ZOJIRUSHI AMERICA CORP.,**<br><br>                              Plaintiff,<br><br>         v.<br><br>**UNITED STATES**,<br><br>                              Defendant. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 15-00268** |

## OPINION

[Dismissing the action for lack of subject matter jurisdiction]

Dated:  August 4, 2016

*John M. Peterson*, Neville Peterson LLP, of New York, NY, for plaintiff.  With him on the brief were *Maria E. Celis* and *Elyssa R. Emsellem*.

*Alexander Vanderweide*, Trial Attorney, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief was *Yelena Slepak*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Stanceu, Chief Judge: In this action, plaintiff Zojirushi America Corporation

("Zojirushi") seeks to compel U.S. Customs and Border Protection ("Customs" or "CBP") to

issue a decision granting or denying the protest it submitted following CBP's "as entered"

liquidations of four of Zojirushi's entries of imported merchandise.  In the protest, Zojirushi

raised for the first time a claim for duty-free treatment of its merchandise under the Generalized

System of Preferences ("GSP") program.  Although Customs issued a decision on that protest,

Customs designated its action as a decision to "reject," rather than grant or deny, the protest.

Upon taking this action, Customs provided as a "protest explanation" the following notation:

"Headquarter Ruling HQ H193959 which states that GSP claims are not protestable."

Before the court is defendant's motion to dismiss under USCIT Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  The court instead dismisses this action for lack

of subject matter jurisdiction.

## I. BACKGROUND

The facts presented as background are based on the complaint and the submissions of the

parties.  Zojirushi, a California corporation with a principal place of business in Torrance,

California, is an importer of vacuum bottles and jars, electrothermic home appliances, and other

housewares.  Compl. ¶ 4 (Sept. 25, 2015), ECF No. 4.  Between May 11, 2013 and July 30,

2013, Zojirushi made four consumption entries of various vacuum bottles and food jars imported

from Thailand at the port of Los Angeles/Long Beach, entering the vacuum bottles under

subheading 9617.00.10, Harmonized Tariff Schedule of the United States (2013) ("HTSUS"),

dutiable at 7.2% *ad. val.* and entering the jars under subheading 9617.00.30, HTSUS, dutiable at

6.9% *ad val.  See id.* at Ex. A & ¶¶ 6, 8; Def.'s Mot. to Dismiss 1-2.  Between May 11, 2014 and

July 30, 2014, Customs liquidated each of the four entries "as entered," i.e., at the classifications

and rates of duty set forth by Zojirushi in the entry documentation.  *See id.*

Zojirushi filed the protest at issue in this case, Protest No. 2704-14-101380, on

September 16, 2014, using CBP Form 19 ("Protest").  *See* Compl. at Ex. A.  The protest included

an application for further review.  *Id.*  Customs returned the Form 19 to Zojirushi, which

Zojirushi received on December 4, 2014.  *Id.*  Customs had filled out Section VI of the form

("Decision") by checking a box designated "Rejected as non-protestable."  *Id.*  Boxes designated

"Denied in full for the reason checked" and "Denied in part for the reason checked" were left

blank.  *Id.*  The notation "Headquarter Ruling HQ H193959 which states that GSP claims are not

protestable" was handwritten below the boxes, and the bottom of the form bore a signature of a

Customs import specialist and the date of December 3, 2014.  *Id.*

Zojirushi instituted this action on September 25, 2015.  Summons, ECF No. 1; Compl.

The following December, defendant filed its motion to dismiss under USCIT Rule 12(b)(6).

Def.'s Mot. to Dismiss, Mem. in Supp. of Def.'s Mot. to Dismiss (Dec. 11, 2015), ECF No. 9

("Def.'s Mem.").  Zojirushi filed its opposition to the motion to dismiss on January 12, 2016.

Mem. of Pl. in Opp'n to Def.'s  Mot. to Dismiss, ECF No. 11.  Defendant replied on February 1,

2016.  Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 12. ("Def.'s

Reply").

## II. DISCUSSION

Zojirushi's complaint contains three counts, each of which Zojirushi relates to the action

taken by Customs to reject its protest.  In Count I, Zojirushi claims that CBP's refusal to allow or

deny its protest was contrary to section 515(a) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C.

§ 1515(a).  Compl. ¶ 19.  In Count II, it contends that a Customs guidance document issued to

Customs Port Directors, dated August 11, 2014, "Guidance: Post-Importation Claims for

Preferential Tariff Treatment," *id*. Exhibit B, and the Customs Headquarters ruling that Customs

cited in rejecting its protest were invalidly issued contrary to notice-and-comment rulemaking

procedures required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.  *Id.* ¶¶ 21-

28.  In Count III, Zojirushi repeats the claim stated in Count I and contends that the guidance

document is an effective repeal of a Customs regulation, 19 C.F.R. § 10.112, which Zojirushi

construes to allow post-entry GSP claims.  *Id.* ¶¶ 30-38.  As a remedy, Zojirushi seeks an order

compelling Customs to review, and allow or deny, its protest and to set aside the guidance

document as having been issued contrary to law.  *Id.* at Prayer for Relief.

Zojirushi asserts jurisdiction under the "residual jurisdiction" provision of section 201 of

the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(4), *id.* ¶ 2, under which the Court of

International Trade is granted exclusive jurisdiction of a civil action commenced against the

United States "that arises out of any law of the United States providing for—(1) revenue from

imports or tonnage . . . or (4) administration and enforcement with respect to the matters referred

to" in paragraph (1).  28 U.S.C. § 1581(i).[1]

Defendant does not move to dismiss this case for lack of subject matter jurisdiction.

Nevertheless, this case presents a jurisdictional issue because the court may not exercise the

jurisdictional grant of § 1581(i) if the action may be brought, or could have been brought, under

any of the subsections (a) through (h) of § 1581, unless the remedy available under one of those

subsections is, or would have been, "manifestly inadequate." *Miller & Co. v. United States*, 824

F.2d 961, 963 (Fed. Cir. 1987).  Subsection (a) provides the Court exclusive jurisdiction over a

civil action "commenced to contest the denial of a protest . . . under section 515 of the Tariff Act

of 1930 [19 U.S.C. § 1515]."  28 U.S.C. § 1581(a).

The parties disagree on whether the decisions of Customs Zojirushi contested

administratively by filing Protest No. 2704-14-101380 were ones that properly were subject to

challenge by means of a protest filed according to section 514(a) of the Tariff Act, 19 U.S.C.

§ 1514(a).  The court must decide this question in order to determine whether it may exercise

subject matter jurisdiction in this case.  If the answer to the question is no, then jurisdiction under

28 U.S.C. § 1581(i)(4) possibly is available for a challenge to the action Customs took in

---

[1] All citations to the United States Code herein are to the 2012 edition unless otherwise indicated.  All citations to the Customs regulations herein are to the 2014 edition of the Code of Federal Regulations unless otherwise indicated.

rejecting the protest.  If the answer to the question is yes, then the court must decide the status of

Protest No. 2704-14-101380, which the court views as an issue to be decided according to

section 515 of the Tariff Act, 19 U.S.C. § 1515.

        The court is able to determine the relevant jurisdictional facts by considering those

factual allegations in the complaint that defendant expressly or impliedly admits in its motion to

dismiss.  For the reasons presented below, the court decides, based on those jurisdictional facts,

that Zojirushi's protest contested decisions that may be protested under 19 U.S.C. § 1514(a).

According to those same facts as viewed according to 19 U.S.C. § 1515, the court also decides

that the action taken by Customs was neither an allowance nor a denial of Protest No. 2704-14-

101380.  Because that action was neither an allowance nor a denial of the protest, the remedy

Congress provided in 19 U.S.C. § 1515(b) and 28 U.S.C. § 1581(a) has been, and remains,

available to Zojirushi.  Accordingly, the court may not exercise jurisdiction over this action

according to 28 U.S.C. § 1581(i)(4).

A.  The Liquidations Zojirushi Contested Before Customs Are Decisions that May Be Protested

        Zojirushi protested the liquidations of the four entries that are the subjects of this case.

Compl. at Ex. A ("Zojirushi America Corporation hereby protests the liquidation of its imported

merchandise, consisting of vacuum bottles and jars, entered and released against the Customs

entries listed in Box 5.").  The liquidations occurred at the rates (7.2% and 6.9% *ad val.*) and

amounts of duty asserted at the time of entry.  The protest claims Zojirushi brought against the

four liquidations were that the merchandise on the four entries qualified for duty-free tariff

treatment under the GSP program.  *Id.* ¶ 9.

        Under section 514 of the Tariff Act, when read in pertinent part, a protest may be filed to

contest "any clerical error, mistake of fact, or other inadvertence . . . adverse to the importer, in

any entry, liquidation, or reliquidation, and, decisions of the Customs Service . . . as to . . . the

liquidation . . . of an entry . . . pursuant to . . . section 1500 of this title . . . ."  19 U.S.C.

§ 1514(a)(5).  The breadth of this language convinces the court that Zojirushi's protest raised, as

to each of the four liquidations of entries, claims within the scope of 19 U.S.C. § 1514(a).  The

language describes these claims in two separate respects.  First, as to each of the four entries, the

omission of the GSP claim at the time of entry was an "inadvertence . . . adverse to the importer"

that appeared in an "entry" and that was reflected in a "liquidation."  *See* 19 U.S.C. § 1514(a).

Second, the statute allows "decisions of the Customs Service . . . as to . . . the liquidation . . . of

an entry" to be protested.  *See* 19 U.S.C. § 1514(a)(5).  Therefore, if the court follows the plain

meaning of the statute, then it must consider the four liquidations to be decisions that are

reviewable in a protest made according to 19 U.S.C. § 1514.  In moving to dismiss (albeit for

failure to state a claim upon which relief can be granted, not for lack of subject matter

jurisdiction), defendant raises several arguments as to why the court should conclude to the

contrary.  The court is not persuaded by these arguments.

### 1.  Defendant's Argument Misinterprets 19 C.F.R. § 10.172

Arguing that the governing Customs regulations "require that a claim for GSP treatment

be made at entry," Def.'s Reply 1-2, defendant maintains that Zojirushi did not challenge a

protestable decision.  Because Zojirushi did not make a timely GSP claim as required by the

Customs regulations, defendant explains, "Customs could not – and did not – make a decision as

to the GSP eligibility of the imported merchandise," adding that "[w]ithout such a decision,

Zojirushi's protest could not be approved or denied pursuant to 19 U.S.C. §1515, and Customs

properly rejected the protest as invalid."  Def.'s Mem. 5.

The court considers defendant's interpretations of the Customs regulations without

deference.  While an agency's interpretations of its own regulations are entitled to deference, *see*

*Christopher v. SmithKline Beacham*, 567 U.S. __, __, 132 S. Ct. 2156, 2166-67 (2012); *Auer v.*

*Robbins*, 519 U.S. 452 (1997), here defendant is relying on interpretations of the Customs

regulations that differ from those Customs has put forth in published rulemaking decisions, as

the court discusses below in this Opinion and Order.[2]

Defendant relies on 19 C.F.R. § 10.172, which, according to defendant, "provides in

relevant part that to obtain duty-free treatment under GSP, 'a written claim shall be filed on the

entry document by placing the symbol "A" as a prefix to the subheading of the [HTSUS] for

each article for which such treatment is claimed.'" Def.'s Mem. 4.  According to defendant,

"[a]lthough a decision to deny a GSP claim is protestable under 19 U.S.C. §1514, a GSP claim

nonetheless must be asserted at entry." *Id.* at 7.

The court rejects defendant's argument because it is based on a misinterpretation of

19 C.F.R. § 10.172.  Defendant's memorandum disregards the plain meaning of the regulation

and the regulatory history, which confirms that GSP claims may be made after the time of entry.

The text of 19 C.F.R. § 10.172 is as follows:

> A claim for an exemption from duty on the ground that the Generalized
> System of Preferences applies shall be allowed by the port director only if he is
> satisfied that the requirements set forth in this section and §§ 10.173 through
> 10.178 have been met.  *If duty-free treatment is claimed at the time of entry*, a
> written claim shall be filed on the entry document by placing the symbol "A" as a

---

[2] Defendant's submissions are confusing as to the position defendant actually is taking on
when a GSP claim must be made in order to be timely under the Customs regulations.  Defendant
argues, variously, that the claim must be made at the time of importation, Def.'s Reply 1, but
also argues that the claim must be made at the time of entry, *id.* at 1-2 and Def.'s Mem 4-5.
Under customs law, the date of importation is not the same concept as the date (or time) of entry.
*See* 19 C.F.R. § 101.1.  In insisting either that a GSP claim be made at time of importation or the
time of entry, defendant's position seems at odds with the position taken in the Customs internal
guidance document, "Guidance: Post-Importation Claims for Preferential Tariff Treatment," that
Zojirushi attaches as Exhibit B to the complaint, under which GSP claims may be made after the
time of importation and after the time of entry if they are made prior to liquidation according to
entry amendment procedures.  At another point in its submissions, defendant seems to agree with
the guidance document.  *See* Def.'s Mem. 12-14.

prefix to the subheading of the Harmonized Tariff Schedule of the United States
for each article for which such treatment is claimed.

19 C.F.R. § 10.172 (emphasis added).  In quoting the provision, Def.'s Mem 4, defendant's

memorandum omits the introductory dependent clause, "If duty-free treatment is claimed at the

time of entry . . . ," which indicates that a claim may be made at a time other than at the time of

entry.  The regulatory history of § 10.172 reveals that the language defendant omitted from the

quotation was added in 1977 precisely to provide for such post-entry GSP claims.  Further, the

regulatory history demonstrates that defendant incorrectly construes the present § 10.172 to

preclude these claims.

      In the form in which it existed prior to a regulatory amendment made effective on

January 17, 1977, 19 C.F.R. § 10.172 read essentially as it does today, except that the

introductory clause, "If duty-free treatment is claimed at the time of entry . . . ," was not present.[3]

The 1977 amendment, effected by Treasury Decision 77-36, revised § 10.172 to add that

introductory clause and to add a sentence at the end.  The revised text, with the additions

highlighted, read as follows:

_____

[3] Prior to the change made effective January 17, 1977, the full text of 19 C.F.R. § 10.172
read as follows:

      A claim for an exemption from duty on the ground that the Generalized
      System of Preferences applies shall be allowed by the appropriate district director
      only if he is satisfied that the requirements set forth in this section and
      sections 10.173 through 10.178 have been met.  A written claim for duty-free
      entry shall be filed on the entry document by placing the symbol "A" as a prefix
      to the Tariff Schedules of the United States Annotated item number for each
      article for which such treatment is claimed.

T.D. 76-2, *Duty Free Entry of Certain Merchandise From Designated Beneficiary Developing
Countries*, 40 Fed. Reg. 60,047, 60,048 (U.S. Customs Serv. Dec. 31, 1975).

>          A claim for an exemption from duty on the ground that the Generalized
> System of Preferences applies shall be allowed by the appropriate district director
> only if he is satisfied that the requirements set forth in this section and
> sections 10.173 through 10.178 have been met.  *If duty-free treatment is claimed
> at the time of entry*, a written claim shall be filed on the entry document by
> placing the symbol "A" as a prefix to the Tariff Schedules of the United States
> Annotated item number for each article for which such treatment is claimed.  *If
> duty-free treatment is claimed subsequent to the time of entry in accordance with
> § 10.112, the filing of the Certificate of Origin, or a duplicate thereof as
> described in § 10.173(a)(2), shall constitute the written claim.*

T.D. 77-36, *Late Filing of Generalized System of Preferences Certificate of Origin Form A*,

42 Fed. Reg. 5,041, 5,041 (U.S. Customs Serv. Jan. 27, 1977) (emphasis added).  In Treasury

Decision 77-36, Customs explained as follows:

> [T]o make it clear that the failure to properly place the symbol "A" on the entry
> document does not preclude the importer or consignee from filing the Certificate
> of the Origin subsequent to the time of entry in accordance with § 10.112 of the
> Customs Regulations, it has been determined that the late filing of the certificate
> in accordance with that section should constitute the written claim for duty-free
> entry.

*Id.*  Thus, Customs expressly recognized that an initial written claim for the GSP preference

could be made after entry, and at any time before the liquidation of the entry becomes final,

pursuant to 19 C.F.R. § 10.112, through the filing of a GSP Certificate of Origin.  Section 10.112

of the Customs Regulations read then as it does today, not having been amended since the initial

promulgation in 1974.[4]

---

[4] T.D. 74-227, 39 Fed. Reg. 32,013, 32,015 (U.S. Customs Serv. Sept. 4, 1974).  Then, as
now, the regulation provided, in pertinent part, as follows:

**10.112  Filing free entry documents or reduced duty documents after entry.**

>          Whenever a free entry or a reduced duty document, form, or statement
> required to be filed in connection with the entry is not filed at the time of the entry
> or within the period for which a bond was filed for its production, but failure to
> file it was not due to willful negligence or fraudulent intent, such document, form,
> (continued…)

In Treasury Decision 94-47, Customs again amended § 10.172, placing it in essentially its

current form.  T.D. 94-47, *Elimination of Certain Documentation Requirements for Articles*

*Entered Under Various Special Tariff Treatment Programs and Provisions*, 59 Fed. Reg. 25,563

(U.S. Customs Serv. May 17, 1994).  In T.D. 94-47, Customs deleted the last sentence in the

provision, i.e., the sentence Treasury Decision 77-36 had added to the end, but it left in place the

other change made at that time, i.e., the introductory phrase, "If duty-free treatment is claimed at

the time of entry . . . ."  *See id.*, 59 Fed. Reg. at 25,569.  Customs explained that by promulgating

Treasury Decision 94-47 it was "removing certain documentation requirements relating to the

entry of articles claimed to be entitled to a partial duty exemption or duty-free treatment under

various special tariff provisions or programs," including "the Generalized System of

Preferences."  *Id.*, 59 Fed. Reg. at 25,563.  Customs explained, further, that "[t]he amendments

reduce regulatory procedures and paperwork and thus facilitate the entry process for both the

public and Customs without affecting the ability of Customs to ensure compliance with the basic

legal requirements under these provisions and programs."  *Id.*  Nothing in Treasury Decision

94-47 provides or even suggests that in promulgating the 1994 amendment Customs intended to

make GSP requirements more stringent.  To the contrary, the expressed intent was to relax a

regulatory requirement by providing that, in the ordinary instance, importers and consignees

were required to provide a GSP Certificate of Origin only if specifically requested to do so by

Customs.  *See id.*, 59 Fed. Reg. at 25,569.  For these reasons, it would be a mistake to interpret

---

(continued…)

or statement may be filed at any time prior to liquidation of the entry or, if the
entry was liquidated, before the liquidation becomes final.

T.D. 94-47 as having eliminated an importer's right to make an initial GSP claim at any time

before the liquidation of the entry becomes final.

### 2.  Defendant's Argument Mistakenly Relies on 19 C.F.R. § 10.173(a)(2)

In arguing that the Customs decisions made upon liquidation were not the proper subjects

of a protest in this case, defendant also relies on 19 C.F.R § 10.173(a)(2), which provides that

"[i]n a case involving merchandise covered by a formal entry which is wholly the growth,

product, or manufacture of a single beneficiary developing country, a statement to that effect

shall be included on the commercial invoice . . . ."  Under defendant's theory, failure to present

an invoice containing such a statement at entry disqualifies the shipment from GSP treatment.

*See* Def.'s Mem. 4-5.  Defendant's citation of § 10.173(a)(2) is unconvincing.  Even were the

court to assume that this provision applies to Zojirushi's merchandise, which is not clear from

the submissions, the court would not conclude that Zojirushi made no protest claim recognized

by 19 U.S.C. § 1514(a).  The cited regulation does not state the consequence of failure to provide

the statement on the invoice, nor does it provide that failure to provide the statement on the

invoice *at the time of entry* forever precludes GSP duty-free treatment.  Moreover, defendant

fails to explain why 19 C.F.R. § 10.112, when interpreted consistently with the regulatory history

the court discussed previously, would not allow a commercial invoice containing the required

notation to be submitted at any time up until the liquidation of the entry becomes final.  In that

regard, defendant interprets § 10.112 too narrowly, arguing that it provides only for filing of

documents supporting a GSP claim and does not cure the failure to make a GSP claim at the time

of entry.  *Id.* at 10-11.  Defendant's interpretation contradicts the interpretation of § 10.112

Customs itself adopted and effectuated in amending its regulations through the promulgation of

T.D. 77-36.

### 3.  Defendant's Construction of 19 U.S.C. § 1514(a) Relies on Inapposite Judicial Decisions

Further to its argument that Zojirushi had no right to protest the four liquidations at issue in this case, defendant maintains that because Customs was not presented with a claim for GSP treatment at entry, Customs could have made no decision upon liquidation as to whether GSP would have been available and, therefore, could not have made a decision that could be protested according to 19 U.S.C. § 1514(a).  *Id.* at 5.

The interpretation of § 1514(a) defendant advances is not the subject of an agency rule or regulation.  Therefore, the court does not accord it the level of deference defined in *Chevron v. Nat'l Resources Def. Council*, 467 U.S. 837 (1984).  However, defendant's interpretation of § 1514(a) is parallel to the interpretation of § 1514(a) Customs adopted in Headquarters Ruling H193959 (July 30, 2012), which the port director cited in rejecting Zojirushi's protest.  The court reviews this interpretation according to the level of deference the Supreme Court defined in *United States v. Mead*, 533 U.S. 218 (2001).  Under that level of deference, the agency's interpretation deserves "respect proportional to its 'power to persuade.'"  *Id.* at 220 (quoting *Skidmore v. Swift*, 323 U.S. 134 (1944)).

*Mead* deference will not save the interpretation of 19 U.S.C. § 1514(a) as set forth in the Headquarters Ruling, which bases its analysis of that statute chiefly on misinterpretations of two decisions of the Court of Appeals for the Federal Circuit ("Court of Appeals"), *Xerox Corp. v. United States*, 423 F.3d 1356 (Fed. Cir. 2005), and *Corrpro Companies, Inc. v. United States*, 433 F.3d 1360 (Fed. Cir. 2006).  Further to its argument for the principle that the GSP preference may not be raised for the first time in a protest (an issue that was not the subject of HQ H193959), defendant also relies on these two decisions in support of its motion to dismiss.  Def.'s Mem. at 5-7.

    *Xerox* and *Corrpro* are not on point.  Each case was decided expressly on the basis of

19 U.S.C. § 1520(d), which implemented a provision of the North American Free Trade

Agreement ("NAFTA") allowing post-importation claims for the NAFTA duty preference to be

filed up to one year following importation, provided a NAFTA certificate of origin is submitted

within that period.  Both *Xerox* and *Corrpro* involved situations in which the claim for the

NAFTA preference was not filed within the statutory one-year period.  The Court of Appeals

concluded that where such a claim is not filed within the statutory period, an importer may not

resort to a protest of the liquidation in an attempt to defeat the statutory time limitation and held,

therefore, that the liquidation is not a protestable decision.  Defendant errs in interpreting the

holdings in these cases to apply to the case at bar, as demonstrated by the following excerpt from

the opinion in *Xerox*:

> By holding as we do, we do not suggest that liquidation by Customs of goods ''as
> entered'' can never give rise to a protestable decision—that by liquidating goods
> ''as entered,'' Customs necessarily will not engage in the sort of decision-making
> process identified by *U.S. Shoe* [*Corp. v. United States,* 114 F.3d 1564, 1569
> (Fed. Cir. 1997)].  Indeed, the government at oral argument conceded that Xerox
> might very well have the right to protest the liquidation of its goods ''as entered,''
> were it not for the rules governing the post-importation claims for preferential
> treatment under NAFTA.  But hypotheticals aside, *the rules governing post-
> importation NAFTA claims provide the exact context from which this case arises.
> Our decision thus turns on the rule of NAFTA and of 19 U.S.C. § 1520(d) that an
> importer must make a post-importation claim for preferential treatment within
> one year of entry*.

*Xerox*, 423 F.3d at 1363 (emphasis added).[5]  GSP claims are not affected by the limitation in

19 U.S.C. § 1520(d), and nothing in the GSP statute or the applicable regulations requires a GSP

---

[5] The Court of Appeals for the Federal Circuit subsequently held in *Ford Motor Co. v.
United States*, 635 F.3d 550, 557 (Fed. Cir. 2011), that the Court of International Trade had
jurisdiction over an action to contest a denial of a protest seeking reliquidation of an entry to
obtain the NAFTA duty preference.  In that case, plaintiff Ford Motor Co. had filed its post-
    (continued…)

claim to be made at the time of entry or precludes a GSP claim that is made at any time before

the liquidation of the entry becomes final.

In further support of its argument that Zojirushi's protest did not contest a decision

subject to protest under 19 U.S.C. § 1514(a), defendant cites various decisions of this Court,

Def.'s Mem. 7, which also are inapposite.  One of the cases relied upon, *Padilla v. United States*,

33 CIT 1515, 659 F. Supp. 2d 1290 (2009) involved an invalid attempt to protest liquidations of

entries that were made subject to 122.88% antidumping duties pursuant to instructions from the

U.S. Department of Commerce.  This Court held that the importer could not protest the

assessment of the antidumping duties upon liquidation, following the long-standing principle, as

held in *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994), that

ministerial assessments of antidumping duties upon liquidation by Customs are not protestable.

*Padilla*, 33 CIT at 1518, 659 F. Supp. 2d at 1293.  Defendant also relies, incorrectly, on *Sunshine

Int'l Trading, Inc. v. United States*, 37 CIT __, Slip Op. 13-25 at 7 (Feb. 26, 2013), in which an

importer attempted to protest an unliquidated entry for which the plaintiff had argued,

incorrectly, that CBP's rejection of the entry papers was an "exclusion" of the merchandise

protestable under 19 U.S.C. § 1514(a).[6]

───────────────────────

(continued…)

importation NAFTA claims, but not the required NAFTA Certificates of Origin, within the
statutory one-year period set forth in 19 U.S.C. § 1520(d).  *Id.* at 552.  The Court of Appeals
reasoned that the filing of the NAFTA Certificate of Origin was not a jurisdictional requirement.
*Id.* at 557.

[6] Defendant also cites other case law in support of its incorrect interpretations of the
Customs regulations.  *See* Def.'s Mem. 10-12.  None of these cases is on point.

The implication of the defendant's interpretation of § 1514(a), and of *Xerox* and *Corrpro*, is that an importer, as a general matter, would be unable to protest "no-change" liquidations, i.e., "as entered" liquidations.  However, as the Court of Appeals cautioned in *Xerox*, its ruling should not be interpreted to support such a limitation on § 1514(a).  To the contrary, no-change liquidations are commonly protested, and the principle that they must be allowed to be protested serves important purposes.  For example, to avoid penalty liability, an importer may be required to enter merchandise in accordance with a binding Customs tariff classification ruling even though it may disagree with that ruling.  The implication of defendant's position is that an importer in that position would be unable to bring a judicial challenge to the Customs classification position, contrary to congressional intent underlying 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a).  The GSP program could serve as another example: if the entered tariff classification is ineligible for the GSP preference but the importer, in a protest of the no-change liquidation, advances a different classification position under which the GSP preference is potentially available, defendant's position would defeat GSP eligibility without a basis in the statute or the regulations.

    4.   The Error in Defendant's Construction of 19 U.S.C. § 1514(a) Is Further
         Demonstrated by a Clarifying Amendment Enacted in 2004

    In summary, the limitation on protests that defendant incorrectly gleans from *Xerox* and *Corrpro*, i.e., that duty-preference claims in general cannot be presented for the first time in protests, is based on a misinterpretation of the holdings in those cases.  That defendant's proffered limitation on protestable decisions is incorrect is further demonstrated by a clarifying amendment Congress made to 19 U.S.C. § 1514(a) in 2004.  In the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, Title II, § 2105, 118 Stat. 2598, Congress repealed section 520(c) of the Tariff Act, 19 U.S.C. § 1520(c), clarified the scope of protestable

decisions as set forth in § 1514(a), and extended the protest period from the then-applicable

90 days to the present 180 days.  The repealed § 1520(c), in paragraph (1), had allowed an

importer to obtain reliquidation of an entry to correct:

> a clerical error, mistake of fact, or other inadvertence, . . . not amounting to an
> error in the construction of a law, adverse to the importer and manifest from the
> record or established by documentary evidence, in any entry, liquidation, or other
> customs transaction, when the error, mistake, or inadvertence is brought to the
> attention of the Customs Service within one year after the date of liquidation or
> exaction . . . .

19 U.S.C. § 1520(c)(1) (2000).  Under the tariff law as it existed prior to the 2004 amendments,

an importer could protest a liquidation (including a "no-change" liquidation) of an entry within

90 days of liquidation.  However, if missing the 90-day deadline, the importer still could obtain

reliquidation of the entry by making a "section 520(c) claim," provided the claim conformed to

the more limited circumstances stated in 19 U.S.C. § 1520(c)(1).  The section 520(c) procedure

commonly was used, for example, where the importer made a mistake of fact or other

inadvertent error at the time of entering merchandise that, but for the error, would have qualified

for more favorable tariff treatment.  The then-existing limitation that the claim could not arise

from an error or inadvertence "amounting to an error in the construction of a law," which

Congress eliminated in the 2004 amendments, ensured that a section 520(c) claim could not be

used to extend the 90-day protest period in most of the common protest situations.

The 2004 amendments eliminated uncertainties that had long arisen over the meaning of

the phrase "not amounting to an error in the construction of a law" while still allowing

corrections in liquidations to be made after 90 days, albeit during a shortened, i.e., 180-day,

period instead of a one-year period.  Because of the concurrent clarifying change that Congress

made to § 1514(a), it would be incorrect to interpret the repeal of 19 U.S.C. § 1520(c) to limit the

authority of Customs to correct, through the protest procedure, clerical errors, mistakes of fact,

and other inadvertences adverse to the importer that occur upon entry or liquidation.[7]  Under the

Tariff Act, at least in the current form (i.e., the form in which the statute applied in this case), it

no longer matters whether or not the error or inadvertence sought to be corrected through a

protest amounts to an error in the construction of a law; nor does it matter whether the

inadvertence was made by the importer or by Customs.[8]  This is not to suggest that, but for the

2004 amendments, Zojirushi would have been unable to protest the liquidations of its four entries

but only to point out that the clarifying change further demonstrates that defendant's overly

narrow construction of § 1514(a) is incorrect.

 In summary, on the jurisdictional facts presented, the court must conclude that Zojirushi

was granted the right to protest the "as entered" liquidations of its four entries by 19 U.S.C.

§ 1514(a).

 B.  Protest No. 2704-14-101380 Was Not "Denied" for Purposes of 19 U.S.C. § 1515(a) and (b)

 Because, as the court has concluded, Zojirushi's protesting of the liquidations of its four

entries was within the ambit of 19 U.S.C. § 1514(a), the provisions of 19 U.S.C. § 1515 apply to

Protest No. 2704-14-101380.  As a general matter, § 1515 provides that Customs, within two

years from the date of filing of a protest in accordance with 19 U.S.C. § 1514, "shall review the

---

[7] In 2011, Customs issued a final rule on, *inter alia*, the changes the Miscellaneous Trade and Technical Corrections Act of 2004 made to sections 514 and 520 of the Tariff Act. Technical Corrections: Matters Subject to Protest and Various Protest Time Limits, 76 Fed. Reg. 2,573 (U.S. Customs and Border Prot. Jan. 14, 2011).  The preamble to the rule demonstrates that Customs viewed the addition to section 514 as a clarification.  *See id.*, 76 Fed. Reg. at 2,573.

[8] While it does not matter for purposes of this litigation, the court notes that the decisions in *Xerox Corp. v. United States*, 423 F.3d 1356 (Fed. Cir. 2005) and *Corrpro Companies, Inc. v. United States*, 433 F.3d 1360 (Fed. Cir. 2006) involved the prior version of 19 U.S.C. § 1514(a), i.e., the version in effect prior to the 2004 clarifying amendment to that subsection.  The 2004 amendments were effective December 18, 2004.  Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, Title II, § 2108, 118 Stat. 2598.

protest and shall allow or deny such protest in whole or in part." 19 U.S.C. § 1515(a).  With

respect to the two-year time limitation, courts have established the rule that where there has not

been a protest allowance or denial after the close of the two year period, and where the

"accelerated disposition" procedure of 19 U.S.C. § 1515(b) has not been invoked, the protest

remains pending indefinitely; it is neither deemed allowed nor deemed denied.  *See Hitachi*

*Home Elecs. (America) Inc. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011) ("*Hitachi*").  The

basis for this rule is § 1515(b), under which a protesting party may request accelerated

disposition by sending a request "by certified or registered mail to the appropriate customs

officer any time concurrent with or following the filing of such protest."  19 U.S.C. § 1515(b);

*see* 19 C.F.R. § 174.22(a).  If a protest allowance or denial does not occur within 30 days

following such mailing, the protest "shall be deemed denied" on the thirtieth day following the

mailing "[f]or purposes of section 1581 of Title 28."  *Id.*; *see* 19 C.F.R. § 174.22(d).  Under the

accelerated disposition provision, a protesting party may obtain through § 1515(b) a decision of

the very type Zojirushi claims it is owed in this case.

   Clearly, the action Customs took on Protest No. 2704-14-101380 was not an allowance.

If it is, instead, deemed to be a denial, Zojirushi could have obtained judicial review related to its

protest only by filing a summons to contest that decision according to 19 U.S.C. § 1514 and

28 U.S.C. § 1581(a).  Zojirushi's complaint pleads no facts indicating that Zojirushi brought an

action to contest the Customs decision on its protest within the time period that applies to an

action to contest a protest denial.  According to 28 U.S.C. § 2636(a)(1), that time period is

180 days from the date of mailing of the Customs decision on the protest (in this case,

apparently, December 3, 2014).  Therefore, an action to contest a protest "denial" would have

been timely only if commenced by June 1, 2015.  Because this action was commenced on

September 25, 2015, it would be time-barred were it to be construed as an action to contest a

protest "denial" made under 19 U.S.C. § 1515.

In deciding the question of jurisdiction this case poses, therefore, the court must decide

whether to deem the action taken by Customs in rejecting the protest to be a "denial" of the

protest within the meaning of 19 U.S.C. § 1515(a).  It could be argued that under 19 U.S.C.

§ 1515(a), where a protest challenges decisions that are subject to challenge under 19 U.S.C.

§ 1514(a), any final action disposing of that protest that is not an allowance, including a

"rejection," should be deemed a denial because it was a final decision.  This argument would

hold that § 1515(a) presents Customs only three options: it may allow a protest (in whole or in

part), it may deny it (in whole or in part), or it may take no action (in which case the protest

remains pending indefinitely, subject to a request for accelerated disposition).  According to this

argument, because Customs *did* take an action intended to dispose of the protest, the protest

cannot be considered to remain pending and hence must be considered to be denied.  As

persuasive as this argument might appear to be at first glance, the court concludes to the

contrary.  Congress established, in 19 U.S.C. § 1515(a), procedural requirements for the denial of

a protest that Customs did not follow, and did not intend to follow, in this case.

The nature of the action Customs took is demonstrated by the protest form.  The port

director filled out Block 18 of the form (CBP Form 19), which contains four boxes, labeled

"Approved," "Rejected as non-protestable," "Denied in full for the reason checked," and

"Denied in part for the reason checked," followed by three more boxes ("Untimely filed," "See

attached protest review decision," and "Other, namely").  Significantly, Customs checked the

box labeled "Rejected as non-protestable" and left blank the boxes for "Denied in full . . ." and

"Denied in part . . . ."  *See* Compl. at Ex. A.  The document does not designate the decision on

Protest No. 2704-14-101380 as a protest denial and, to the contrary, informed Zojirushi that

Customs did not consider the action to be a denial for purposes of 19 U.S.C. § 1515(a).[9]

Section 515(a) of the Tariff Act directs that "[n]otice of the *denial* of any protest shall be

mailed in the form and manner prescribed by the Secretary" and "shall include a statement of the

reasons for the *denial*, as well as a statement informing the protesting party of his right to file a

civil action contesting the *denial* of a protest under section 1514 of this title."  19 U.S.C.

§ 1515(a) (emphasis added).  In so directing, Congress recognized the importance of the

agency's notifying a protesting party of a protest denial and of the party's right to obtain judicial

review of a protest denial under 19 U.S.C. § 1514 and the related provision, 28 U.S.C. § 1581(a).

In this case, Customs did not notify the protesting party of a protest denial.  Customs did not

provide Zojirushi "a statement of the reasons for the denial" and instead communicated that there

*was* no denial, citing only a ruling and a statement informing Zojirushi that there was no right to

protest.  Nor did Customs inform Zojirushi of the right to obtain judicial review under 19 U.S.C.

§ 1514.[10]  Instead, all of the actions Customs took communicated to the importer that no valid

---

[9] In addition, Zojirushi made, in connection with its protest, an application for further
review.  Compl. at Ex. A; *see* 19 U.S.C. § 1515(a).  Where a protesting party files with Customs
an application for further review of a protest filed under 19 U.S.C. § 1514, the port director is
required by 19 U.S.C. § 1515(a) to allow or deny that application within 30 days of the filing of
the application.  The port director did not follow this procedure.  While the Customs decision, as
set forth on the Form 19, does not provide a reason for his not doing so, it fairly can be surmised
that the port director considered further review to be inapplicable due to the action being taken
on the protest itself, i.e., the rejection.

[10] The CBP Form 19 used in this case contains boilerplate language informing a
protesting party that "[i]f your protest is denied, in whole or in part, and you wish to CONTEST
the denial, you may do so by bringing a civil action in the U.S. Court of International Trade
within 180 days after the date of mailing of Notice of Denial."  Compl. at Ex. A.  Because the
port director, in completing Block 17 of the form, left unchecked the boxes for "Denied in
full . . ." and "Denied in part . . ." and instead checked the box labeled "Rejected as non-
    (continued…)

summons *could* be filed to obtain, according to 19 U.S.C. § 1514, judicial review of the decision

by which Customs disposed of the protest.  Because Customs did not follow (and did not intend

to follow) the specific procedures Congress established for denying a protest, it would be

incorrect for the court to "deem" the action Customs took, i.e., a "rejection" of a protest as "non-

protestable," to be a protest denial for purposes of 19 U.S.C. § 1515(a).  In other provisions of

the Tariff Act, Congress provided for deemed denials of protests; *see, e.g.*, 19 U.S.C.

§§ 1499(c)(5)(B), 1515(b).  Congress did not do so in § 1515(a).

### C.  Because the Statutory "Accelerated Disposition" Procedure Is, and Has Been, Available to Zojirushi, the Court Lacks Jurisdiction under 28 U.S.C. § 1581(i)(4)

Where jurisdiction under one of the provisions set forth in 28 U.S.C. § 1581(a)

through (h) is available and will provide an adequate remedy, the court may not exercise

jurisdiction under the "residual" jurisdiction provision of § 1581(i)(4).  *Miller & Co.*, 824 F.2d

at 963.  Specifically, this Court may not exercise residual jurisdiction over an action that could

have been brought under the jurisdictional grant provided in 28 U.S.C. § 1581(a).  *Int'l Customs

Prods. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006).

Zojirushi may obtain jurisdiction under 28 U.S.C. § 1581(a) through the accelerated

disposition procedure set forth in 19 U.S.C. § 1515(b).  A protesting party is entitled to invoke

that procedure whenever "a protest has not been allowed or denied in whole or in part."

19 U.S.C. § 1515(b).  Because the action Customs took neither allowed nor denied Protest No.

_____

(continued…)

protestable," the form did not serve to notify Zojirushi of the right to judicial review under
19 U.S.C. § 1514.

2704-14-101380, that situation exists in this case.[11]  Although Customs disposed of the protest

through a final decision, it was not a final decision of a type recognized by § 1515(b) as

sufficient to terminate a protesting party's right to accelerated disposition.  The procedure of

§ 1515(b) has been available to Zojirushi since the time it filed its protest on September 16,

2014.  Were that procedure to be invoked now, any inaction by Customs, or any action Customs

takes in response within 30 days of the request, other than an allowance of the protest in the

entirety, will result in the opportunity to obtain judicial review under the jurisdictional grant of

28 U.S.C. § 1581(a).  *See Hitachi*, 661 F.3d at 1350-51.

        Were Zojirushi to prevail in an action brought under the jurisdiction provided in

28 U.S.C. § 1581(a), it could avail itself of an adequate remedy.  The essence of Zojirushi's

claim, as stated in Counts I and III of the complaint, is that Customs acted unlawfully in rejecting

its protest rather than allowing it or denying it.  Congress addressed this subject matter by

enacting 19 U.S.C. § 1515(b).

        In Count II of the complaint, Zojirushi addresses the August 11, 2014 Customs internal

guidance document, "Guidance: Post-Importation Claims for Preferential Tariff Treatment,"

which Zojirushi attaches as Exhibit B to the complaint, and Customs Headquarters Ruling

H193959, the ruling the port director cited in completing Block 18 of the protest form.  Citing

the notice-and-comment rulemaking requirements of the APA, 5 U.S.C. § 553, Zojirushi presents

legal arguments as to why it considers the guidance document and the ruling to have been issued

contrary to law.  Compl. ¶¶ 23-27.  Zojirushi further states in Count II that "[t]o the extent

Customs' refusal to review and decide Long Beach Protest 2704-14-101380 is predicated, in

---

        [11] The complaint pleads no facts from which the court could conclude that Zojirushi
already has requested accelerated disposition according to 19 U.S.C. § 1515(b).

whole or in part, on complaint Exhibit B [i.e., the guidance document] and/or Customs

Headquarters Ruling [H]193959, said Customs Headquarters ruling must be held unlawful and

set aside as agency action taken without observance of procedure required by law." *Id.* ¶ 28.

The court construes Count II as intertwined with Zojirushi's challenge to the action Customs

took on the protest rather than as a separate claim independent of that challenge.

     The court does not construe Count III of the complaint to state a separate claim but

instead construes it as additional grounds.  In brief summary, plaintiff contends in Count III that

to the extent the guidance document "purports to repeal or limit 19 C.F.R. § 10.112" it was

issued in violation of the APA.  *Id.* ¶ 35.  As it did in Count II, Zojirushi presents in Count III

grounds as to why it considers the rejection of the protest to have been contrary to law, stating

that "[t]o the extent Customs refused to review Long Beach Protest 2704-14-101380 or to allow

or deny it, such action is without observance of procedure required by law and must be set aside

as unlawful." *Id.* ¶ 38.  This is the same claim as pled in Count I, in which Zojirushi also states

that CBP's refusal to allow or deny the protest was unlawful, contending that the court is

directed by the APA, 5 U.S.C. § 706(1), to compel agency action that is unlawfully withheld or

unreasonably delayed.  *See* Compl. ¶ 19.

     In summary, Zojirushi's claim, when properly construed, is one for which Zojirushi

potentially could obtain an adequate remedy upon prevailing in a future action brought to contest

a denial of its protest, were such a denial to occur.

### III. CONCLUSION

     The decisions contested in Protest No. 2704-14-101380 are within the class of decisions

that may be protested according to 19 U.S.C. § 1514(a).  Customs issued a decision disposing of

that protest, but that decision does not qualify as an allowance or a denial of the protest for

purposes of 19 U.S.C. § 1515.  Under subsection (b) of § 1515, only an allowance or denial of a

protest, in whole or in part, suffices to foreclose the opportunity provided thereunder for

accelerated disposition.  According to the jurisdictional facts presented here, that opportunity has

existed since the filing of the protest and still exists.  Therefore, the court may not exercise

jurisdiction over this action according to the residual jurisdiction granted in 28 U.S.C.

§ 1581(i)(4).  The court will enter judgment dismissing this action for lack of subject matter

jurisdiction.

                                                          /s/ Timothy C. Stanceu
                                                          Timothy C. Stanceu
                                                          Chief Judge

Dated:  August 4, 2016
            New York, New York